

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| | |
|---|---|
| In re: | : |
| | : |
| Barbara Ann Kelly, | : Case No.: 18-13244-WIL |
| | : Chapter 13 |
| | : |
| Debtor. | : |

### **MEMORANDUM OPINION**

Before the Court are two emergency motions seeking reconsideration of the Order With Notice Dismissing Chapter 13 Case on Motion of Chapter 13 Trustee for Failure to Qualify for Relief Under Chapter 13 entered on July 13, 2018 (the "Dismissal Order") and the Amended Opposition thereto filed by U.S. Bank National Association ("U.S. Bank"). The first Motion to Reconsider was filed by Gregory B. Myers, the Debtor's spouse. The second Motion to Reconsider was filed by the Debtor, Barbara Ann Kelly ("Kelly") (together, the two emergency motions are referred to as the "Motions to Reconsider"). The Court finds that the Motions to Reconsider, which are nearly identical, adequately sets forth Kelly and Mr. Myers' arguments and that a hearing would not aid the decisional process. *See* Local Bankruptcy Rule 9013-1(b)(4). For the following reasons, the Motions to Reconsider are denied.

1

**I.     Background**

By way of background, Kelly filed a petition under Chapter 13 of the Bankruptcy Code on March 13, 2018 (the "Petition Date"). Kelly did not file schedules with her petition so the Court issued a Notice of Deadline for Filing Missing Document giving her until March 27, 2018, to file all required documents. On March 27, 2018, Kelly filed a request to extend the deadline to file all required documents, including her schedules. Kelly's request was granted by Order entered on March 29, 2018, and Kelly was given an extension through April 10, 2018. Kelly filed the required documents on April 11, 2018.

Kelly's Schedule A lists four parcels of real property in which she has an ownership interest: (i) 700 Gulf Shore Boulevard, North, Naples, FL 34102 with a stated value of $2,575,908.00 (the "Naples Property"); (ii) 4505 Wetherill Road, Bethesda, MD 20816 with a stated value of $1,144,200.00 (the "Bethesda Property"); (iii) Lot 13 Seaside 15 Subdivision, TBD Wakula Lane, Santa Rosa Beach, FL 32459 with a stated value of $362,365.00 (the "Wakula Lane Property"); and (iv) 147 Silver Laurel Way, Santa Rosa Beach, FL 32459 with a stated value of $891,987.00 (the "Silver Laurel Way Property"). Kelly's Schedule D indicates that there are no creditors holding secured claims against her property and states: "See Addendum to Schedules." The attached Addendum explains that Kelly, Mr. Myers and Regions Bank reached a settlement in 2015 that fully released any claims Regions Bank had against the Naples Property stemming from a loan made by AmSouth Bank[1] to Kelly in 2005 that was secured by the Naples Property. Based on the purported settlement agreement,[2] the Addendum states that "there are no secured claims against the property located at 700 Gulf Shore Boulevard, North, Naples, Florida, 34102." As for

---

[1] The Addendum explains that AmSouth merged with Regions Bank.

[2] A copy of the settlement agreement was attached as an exhibit to Kelly's schedules.

the Bethesda Property, the Addendum refers to a letter Kelly submitted to the Honorable Paul Grimm in connection with a case captioned *Barbara Ann Kelly v. WaMu Mortgage Pass-Through Certificates Series 2007-OA4*, Case No.: 8:17-cv-01812-PWG. The letter to Judge Grimm, which is attached to the Addendum, details various theories why the named defendant in that action cannot enforce its asserted security interest in the Bethesda Property. As for the Silver Laurel Way Property, the Addendum simply states: "On February 9, 2018, Kelly and Gregory B. Myers ("Myers") filed a Joint Notice of Appeal of Order Denying Defendants' Objection to Foreclosure Sale in the Florida First District Court of Appeals." Lastly, the Addendum states that Kelly and SunTrust Bank entered into a "Settlement Agreement" on April 8, 2015, pursuant to which the mortgage encumbering the Wakula Lane Property was released.

Kelly's Schedule E/F lists no priority unsecured claims and lists twelve nonpriority unsecured claims—two of which are listed as having claims in the amount of $0.00 and eight of which are listed as having claims in an "Unknown" amount. The two remaining claims total $297,021.00. Six of the listed unsecured claims are listed as "disputed," including four in "Unknown" amounts and two in the amount of $0.00.[3] SunTrust Bank is listed as having a "contingent" unsecured claim in the amount of $232,021.00 based on a "Settlement Agreement."

Despite the representations in Kelly's schedules and the explanations contained in the supporting Addendum, three entities filed proof of claims asserting secured claims against Kelly's real property totaling $6,204,504.52 (together, the "Secured Claims"). Namely, Wells Fargo Bank, N.A. filed a proof of claim on behalf of U.S. Bank in the amount of $3,219,793.50 purportedly secured by the Naples Property (the "Naples Claim"); SunTrust Mortgage, Inc. filed a

---

[3] Kelly filed a deficient Amended Schedule E/F on May 24, 2018, which was stricken from the official record of this case on June 14, 2018, for Kelly's failure to cure deficiencies.

proof of claim on behalf of SunTrust Bank in the amount of $663,277.97 purportedly secured by the Wakula Lane Property (the "Wakula Lane Claim"); and U.S. Bank filed a proof of claim in the amount of $2,321,433.05 purportedly secured by the Bethesda Property (the "Bethesda Claim"). Loan documents evidencing the secured nature of the asserted claims were filed with the three proof of claims.

In addition to the aforementioned "secured" claims, nine proof of claims were filed by various creditors asserting unsecured claims totaling $1,057,037.89 (together, the "Unsecured Claims").[4]  Most notably, Seaside Community Development Corp. ("Seaside") filed a proof of claim asserting an unsecured claim against Kelly in the amount of $611,543.30 based on an Order of the United States District Court for the Northern District of Florida, Pensacola Division dated August 30, 2017, and a corresponding Judgment dated August 31, 2017 (the "Seaside Claim"). The Order and Judgment were attached as exhibits to Seaside's proof of claim.   Also attached was an Amended Judgment dated December 7, 2017, in the same amount as the August 31, 2017 Judgment, specifying that judgment was entered against "Plaintiff, Barbara Ann Kelly."   The Order, Judgment and Amended Judgment indicate that Kelly is the only listed plaintiff in that action and the Order dated August 30, 2017, and the Amended Judgment dated December 7, 2017, make clear that the attorney's fees forming the basis of the judgment were being assessed against her.  The Unsecured Claims also include a proof of claim filed by Wolff & Orenstein, LLC in the amount of $40,828.30 for legal services rendered to Kelly; a proof of claim filed by The Woods Academy in the amount of $67,193.00 for unpaid educational expenses; and a proof of claim filed by Offit Kurman, P.A. in the amount of $330,965.28 for legal services rendered to Kelly. Seaside, Wolff & Orenstein, and the Woods Academy were all listed on Kelly's Schedule E/F as

---

[4] This total does not include a claim filed by the Comptroller of the Treasury on August 20, 2018 – after Kelly's case was dismissed – in the amount of $3,855.00 for "income taxes."

4

having claims in "Unknown" amounts.   Offit Kurman, P.A. was listed on Kelly's Schedule E/F as having a claim for $0.00.

## II.     The Motion to Dismiss

Based on the proof of claims filed as of April 18, 2018, including the Naples Claim and the Seaside Claim, the Chapter 13 Trustee filed a "Motion to Dismiss for Failure to Qualify for Relief Under Chapter 13 and Notice of Opportunity for a Hearing" on April 18, 2018 (the "Motion to Dismiss").   The Motion to Dismiss asserted that Kelly owes noncontingent, liquidated, unsecured debts in excess of $394,725.00, the Chapter 13 jurisdictional limit for unsecured creditors as set forth in 11 U.S.C. § 109(e), based on the Seaside Claim.   The Motion to Dismiss further asserted that Kelly owes noncontingent, liquidated, secured debts in excess of $1,184,200.00, the Chapter 13 jurisdictional limit for secured creditors as set forth in 11 U.S.C. § 109(e), based on the Naples Claim.   Moreover, the Motion to Dismiss asserted that given Kelly's scheduled value of the Naples Property, the Naples Claim is undersecured and the resulting unsecured portion, by itself, exceeds the unsecured debt limit set forth above.   For these reasons, the Chapter 13 Trustee requested that Kelly's bankruptcy case be dismissed.

Kelly filed an Opposition to the Motion to Dismiss in which she denied that her debts exceed the Chapter 13 limits and "respectfully demand[ed] a full evidentiary hearing[.]"   Kelly asserted that the Seaside Claim is a fraudulent claim because the Amended Judgment dated December 7, 2017, "was obtained by fraud and is void and of no force or effect."   More specifically, Kelly asserted that the Judgment dated August 31, 2017 did not contain her name and is the subject of an appeal filed by her, and further asserted that the Amended Judgment dated December 7, 2017, which Kelly also appealed, was entered after a phone call by Seaside's attorney to a case administrator asking her to add Kelly's name to the judgment without providing Kelly

with any notice.   As for the Naples Claim, Kelly asserted that the Naples Claim is also fraudulent because the amounts allegedly owed to U.S. Bank were released as part of a settlement agreement between Kelly, Mr. Myers and Regions Bank dated April 8, 2015 (the "Regions Settlement Agreement").   Based on the Regions Settlement Agreement, Kelly argued that the Naples Claim is "at best unliquidated and subject to a bona fide dispute" because the amount of the claim cannot be readily determined without a full evidentiary hearing that would require this Court to impermissibly "sit in review of the state court."   Lastly, Kelly argued that scheduled value of the Naples Property was based on a tax assessment and that its current fair market value is "substantially in excess of any purported secured claims on the Naples Property."   A copy of the aforementioned August 31, 2017 Judgment and the December 7, 2017 Amended Judgment were attached to Kelly's Opposition along with a copy of the Regions Settlement Agreement.

On May 24, 2018, Offit Kurman, P.A. filed a Response in support of the Motion to Dismiss in which it stated that as of the May 22, 2018 deadline for non-governmental creditors to file claims in Kelly's case, nine claimants have filed claims that far exceed the Chapter 13 debt limits set forth in 11 U.S.C. § 109(e).

On May 31, 2018, U.S. Bank filed a Memorandum in support of the Motion to Dismiss. U.S. Bank's Memorandum details the loan history behind the Naples Claim and the subsequent litigation between U.S. Bank and Kelly arising out of foreclosure proceedings brought in connection with the subject loan.   U.S. Bank explains that after a three-day trial in the foreclosure proceedings held on February 19-20 and April 16, 2015, the Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida entered a 45-page Findings of Fact, Conclusions of Law, and Final Judgment of Foreclosure in which it determined that U.S. Bank holds a lien against the Naples Property in the amount of $2,753,490.90, plus interest (the "Final Judgment of

Foreclosure"). The Final Judgment of Foreclosure, which was entered on September 10, 2015, is attached as an exhibit to U.S. Bank's Memorandum. Also attached as an exhibit to U.S. Bank's Memorandum is a copy of an Opinion filed March 21, 2018, by the Florida Second District Court of Appeal (the "Appellate Opinion"). The Appellate Opinion simply states "Affirmed" and contains a notation that the Opinion is "NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED." The Appellate Opinion was entered after this Court permitted Kelly and Mr. Myers' appeals of the Final Judgment of Foreclosure to proceed in connection with a Motion for Relief From Automatic Stay that was filed by U.S. Bank in Mr. Myers' bankruptcy case.[5] The Motion for Relief From Automatic Stay was granted with Mr. Myers' consent by Order entered November 14, 2016, in Mr. Myers' bankruptcy case.[6] U.S. Bank asserts that the Final Judgment of Foreclosure is a final judgment that cannot be collaterally attacked by Kelly in this Court. U.S. Bank also refutes Kelly's assertion that her obligations to U.S. Bank were released by the Regions Settlement based on the fact that U.S. Bank acquired the mortgage underlying the Naples Claim from Regions Bank long before the Regions Settlement Agreement was entered into in 2015.

The Court set a hearing on the Motion to Dismiss for June 12, 2018. On June 6, 2018, Kelly filed an Emergency Motion to Continue the hearing for medical reasons. The Court granted the continuance and rescheduled the hearing for July 10, 2018. On June 29, 2018, prior to the continued hearing, U.S. Bank, as the holder of the loan underlying the Bethesda Claim, filed a separate response to the Motion to Dismiss stating that its efforts to foreclose on the Bethesda

---

[5] The undersigned also presides over Mr. Myers' pending Chapter 7 bankruptcy case, Case No. 15-26033-WIL.

[6] A copy of the November 14, 2016 Consent Order entered by this Court was attached as an exhibit to U.S. Bank's Memorandum.

Property were stayed by Kelly's bankruptcy filing but rather than dismissal, U.S. Bank requested that Kelly's case be converted to Chapter 7. On July 10, 2018 — the day of the hearing on the Motion to Dismiss — Mr. Myers filed a 14-page Opposition to the Motion to Dismiss with 170 pages of exhibits attached thereto. The Court did not become aware of Mr. Myers' untimely Opposition until immediately before the hearing and did not have time to review his Opposition prior to the hearing.

At the hearing, the Court heard opening statements from the parties and then explained that it had reviewed all of the filings (aside from Mr. Myers' untimely Opposition) and proof of claims and agreed with the Chapter 13 Trustee that Kelly does not qualify for relief under Chapter 13 because her debts exceed the statutory limits. Mr. Myers then addressed the Court and argued that they were entitled to an evidentiary hearing on the matter. The Court disagreed and told Mr. Myers that it would not hear argument from him because he did not file a timely opposition, he is not a party to this matter, and his interests were aligned with his wife's interests and therefore, adequately represented by her Opposition. The Court then dismissed Kelly's bankruptcy case after declining to convert her case to Chapter 7 at U.S. Bank's request. The Dismissal Order was entered on July 13, 2018. Mr. Myers' Motion to Reconsider was timely filed on July 18, 2018, and Kelly's Motion to Reconsider was timely filed on July 19, 2018.

### III. Analysis

The Motions to Reconsider raise numerous arguments for why the Dismissal Order should be vacated and the Motion to Dismiss be scheduled for a full evidentiary hearing. Movants argue that they were denied due process because the Court refused to conduct an evidentiary hearing on the Motion to Dismiss and failed to properly notify Movants that the hearing was not going to be an evidentiary hearing. Movants detail why the Naples Claim and the Seaside Claims are

8

fraudulent and should not be considered in the Court's eligibility analysis – arguments that were previously presented in Kelly's Opposition to the Motion to Dismiss. Mr. Myers' Motion further argues that the Court acted improperly when it refused to hear from him at the hearing because the Court determined that his interests in the matter were aligned with Kelly's interests and therefore, were adequately represented by her Opposition to the Motion to Dismiss. Attached as an exhibit to the Motions to Reconsider is a copy of an Order of the Florida Second District Court of Appeal dated July 16, 2018, simply stating: "By Order of the Court: This court's mandate issued April 11, 2018, is recalled." The Motions to Reconsider indicate that the attached Order relates to the Final Judgment of Foreclosure, but fail to give any specifics as to the mandate being recalled or how it affects these proceedings.

**A.     Fed. R. Bankr. P. 9023**

Fed. R. Bankr. P. 9023 (New Trials; Amendment of Judgments) provides that Fed. R. Civ. P. 59 applies to bankruptcy cases. Fed. R. Bankr. P. 9023. Fed. R. Civ. P. 59(a)(2) provides: "After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." Fed. R. Civ. P. 59. Reconsideration of a judgment or order after its entry is an extraordinary remedy that should be used sparingly. *See Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). Rule 59(e) is not a mechanism by which an "unhappy litigant" can rehash matters a court has already decided. *In re Henning*, 420 B.R. 773, 785 (Bankr. W.D. Tenn. 2009). Although Rule 59 does not provide a standard for when a court may grant such a motion, courts have recognized three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent

manifest injustice.  *See Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d at 403.   Here, the Motions to Reconsider argue that Dismissal Order should be vacated "to correct clear errors of law and to prevent that (sic) manifest injustice that will flow from the Court's Dismissal Order."

With respect to preventing "manifest injustice," courts have established various guidelines to be used on a case-by-case basis.  *In re Henning*, 420 B.R. at 785.   "A movant seeking Rule 59(e) relief must be able to show an error in the trial court that is direct, obvious, and observable." *Id*.  "The movant must also be able to demonstrate that the underlying judgment caused them some type of serious injustice which could be avoided if the judgment were reconsidered."  *Id*. "Essentially, 'a showing of manifest injustice requires that there exists a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with the applicable policy.'"  *Id*. (quoting *McDaniel v. American General Fin'l. Servs., Inc.,* 2007 WL 2084277, *2 (W.D. Tenn. 2007)).

Rule 9023 requires that any motion for a new trial or to alter or amend a judgment shall be filed within 14 days after entry of the judgment.  Fed. R. Bankr. P. 9023.   In the instant case, the Motions to Reconsider were timely filed but for the reasons set forth below, they fail to warrant the extraordinary remedy of altering or amending the Dismissal Order under Rule 59(e).[7]

**B.     The Eligibility Determination**

"Generally, eligibility for Chapter 13 is based upon debts as of the petition date and not upon post-petition events such as allowed claims, filed claims, or treatment of claims in a

---

[7] The Motions to Reconsider also cite Fed. R. Civ. P. 60, made applicable to bankruptcy cases by Fed. R. Bankr. P. 9024, as a basis to alter or amend the Dismissal Order, although Movants fail to specify which subsection(s) of Rule 60(b) on which they rely.   The Court notes, however, that Movants' burden under Rule 60(b) is the same as that under Rule 59(e) and such relief can only be granted under extraordinary circumstances.   *See In re Babcock*, 258 B.R. 646, 649 (Bankr. E.D. Va. 2001)("[I]t has generally been held that a Rule 60(b) motion, at least in the context of bankruptcy cases, is an extraordinary remedy.").   The standard required to find relief appropriate under Rule 60(b) is extremely high in that the action is only available to present a grave miscarriage of justice.  *See id.*   Here, Movants fail to meet their burden under any subsection of Rule 60(b) for the same reasons as they fail to meet their burden under Rule 59(e).

confirmed Chapter 13 plan." *In re Rios*, 476 B.R. 685, 688 (Bankr. D. Mass. 2012). Accordingly, the starting point of the bankruptcy court's eligibility analysis is the debtor's schedules. *See id.* However, where it appears the debtor did not exercise reasonable diligence or good faith in completing and filing his/her schedules, and an objection to eligibility is raised, the bankruptcy court may look to other evidence to determine eligibility, including post-petition events and filed claims. *See id.*; *see also In re Marrama*, 345 B.R. 458, 468-469 (Bankr. D. Mass. 2006). Moreover, a bankruptcy court can "scrutinize and redesignate the characterization by a debtor of any given debt when that characterization is the subject of a case or controversy," such as when a debtor schedules a claim as "unknown" or "unliquidated" but it appears to a legal certainty that the amount owed is other than what the debtor maintains. *In re De Jounghe*, 334 B.R. 760, 768 (1st Cir. B.A.P. 2005); *see also In re Stern*, 266 B.R. 322, 326 (Bankr D. Md. 2001). A debtor cannot circumvent the Chapter 13 eligibility limitations by ignoring what she knows and/or failing to conduct minimal due diligence and instead, listing claims as "unknown." *See Matter of Redburn*, 193 B.R. 249, 256 (Bankr. W.D. Mich. 1996). "To decide otherwise would eviscerate the chapter 13 eligibility requirements." *Id.*

The circumstances of this case required the Court to look beyond Kelly's filed schedules to determine her eligibility for Chapter 13 for two reasons. First, the Court does not find that Kelly used reasonable diligence in completing her schedules in light of the numerous creditors listed with claims in "unknown" amounts. These claims could have been determined with minimal effort by Kelly, particularly when she was given additional time to file her schedules. Second, the enormous disparity between the filed claims in this case and the claims scheduled by Kelly required the Court to look past her schedules once the eligibility issue was raised. As set forth above, it would eviscerate the Chapter 13 eligibility requirements if a court could only consider a

debtor's schedules regardless of their completion and apparent inaccuracies. Here, Kelly's Schedule D indicates that she has no secured creditors, yet the Secured Claims filed in her case total $6,204,504.52. Similarly, Kelly's Schedule E/F indicates unsecured claims totaling $297,021.00, with eight claims listed in "unknown" amounts, yet the Unsecured Claims filed in this case prior to its dismissal total $1,057,037.89. This Court's analysis could not be restricted solely to Kelly's schedules in light of the substantial discrepancies between her schedules and the filed proof of claims, particularly when several creditors with "Unknown" claims filed claims in set amounts.

### C.     Entitlement to an Evidentiary Hearing

Addressing Movants' asserted entitlement to a full evidentiary hearing on the Motion to Dismiss, the Court holds that no such entitlement exists. Generally, a motion to dismiss requires notice and a hearing. 11 U.S.C. § 1307(c). Section 102 of the Bankruptcy Code, which sets forth the Code's "Rules of construction," provides that "after notice and a hearing" means "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). Section 109(e) does not require an evidentiary hearing. Rather, as stated by the United States Bankruptcy Appellate Panel of the First Circuit, "a full evidentiary hearing is not required, so long as the parties had a fair opportunity to offer relevant facts and arguments to the court and to confront their adversaries' submissions." *In re De Jounghe*, 334 B.R. at 766.

As previously stated, the starting point of a court's eligibility analysis is the debtor's schedules. However, where it appears that a debtor did not exercise reasonable diligence or good faith in completing her schedules, the bankruptcy court may look to other evidence to determine eligibility, including post-petition events and filed claims. This does not require an extensive

inquiry.  *See In re Marrama*, 345 B.R. at 473.   Rather:

> [T]he purpose of the Court's review of the Debtors' schedules and the creditors' proofs of claim is not to address the merits of the claims or to attempt to determine liability.   It is solely to determine: 1) whether or not the schedules and proofs of claim were made in good faith; and 2) whether the claim is liquidated or not so that the eligibility determination may be made.

*In re Salazar*, 348 B.R. 559, 565 (Bankr. D. Colo. 2006); *see also Barcal v. Laughlin (In re Barcal)*, 213 B.R. 1008, 1015 (8th Cir. B.A.P. 1997)("To require the bankruptcy court to decide the merits of disputed claims before determining eligibility imposes an impractical burden and delay upon the Chapter 13 court."). Where litigation in state court has defined the amount of the debt, the debt appears to be liquidated under both the "readily determinable" and "readily ascertainable" standards and substantial hearings or review of evidence is not required to verify the amount of the debt.  *In re Wiencko*, 275 B.R. 772, 779 (Bankr. W.D. Va. 2002).  "Only the slightest modicum of effort is required to determine the amount of the debt; indeed, the court need only survey the money judgment which was figured down to the penny."  *Id.*

In the instant case, the Court does not find that Kelly exercised proper due diligence in completing her schedules and further finds that the assertions contained in the Addendum to her Schedule D in no way establish that there are no secured claims against the Bethesda and Silver Laurel Way Properties.  The Addendum merely shows that Kelly disputes any secured claims against those properties.  As for the Naples Property, the Addendum at least sets forth a plausible reason for Regions Bank not having a secured claim against the Naples Property *i.e.,* the lien was released as part of the Regions Settlement Agreement, however, the Addendum fails to mention U.S. Bank's asserted lien against the Naples Property as reflected in its proof of claim, which was filed before Kelly even filed her schedules.   Based on the mere assertions in the Addendum and the obvious conflicts with the filed claims in this case, the Court looked to those claims to

determine whether they are contingent or unliquidated for § 109(e) purposes. The Court also considered the papers and supporting documents filed in connection with the Motion to Dismiss, including Kelly's Opposition and attached exhibits. Despite Kelly's request for a full evidentiary hearing, the pleadings and the filed claims provided enough information for this Court to determine Kelly's eligibility without the need for a prolonged evidentiary hearing during which Kelly and/or Mr. Myers would attempt to litigate the merits of their disputes with various claimants. Specifically, the Naples Claim and the supporting Final Judgment of Foreclosure, and the Seaside Claim, sufficiently establish that Kelly's debts exceed the Chapter 13 debt limits. The disputed nature of those claims, as discussed more fully below, do not render those obligations unliquidated for § 109(e) purposes.

### D. <u>Disputed vs. Unliquidated Claims</u>

Kelly's Schedule E/F lists twelve nonpriority unsecured claims including eight claims in "Unknown" amounts and two claims in the amount of $0.00. Six of the scheduled claims are listed as "disputed." Although Kelly filed an Amended Schedule E/F listing additional nonpriority unsecured claims and changing the nature of several previously listed claims from "disputed" to "unliquidated" and "disputed," the Amended Schedule E/F was deficient and stricken from the record in this case and cannot be considered. Nevertheless, Kelly's Opposition to the Motion to Dismiss alleged that the Seaside Claim and the Naples Claim are fraudulent claims and subject to bona fide dispute, thereby rendering the claims unliquidated because they cannot be readily determined. The Motions to Reconsider reiterate this argument and further assert that various post-judgment motions and/or appeals render the debts disputed *and* unliquidated. For the following reasons, these arguments are without merit.

First, § 109(e) mandates that the Court consider only noncongintent and liquidated debts as

14

of the petition date when determining a debtor's eligibility for Chapter 13 relief. This includes claims that are disputed as to liability. *See In re Stern*, 266 B.R. at 327 (Bankr. D. Md. 2001). Otherwise, debtors would simply list all of their debts as "disputed" to bypass the Chapter 13 debt limitations. Although Kelly argues that the disputed nature of the Seaside and Naples Claims render them unliquidated, that is not the case here. "[T]he key factor in distinguishing liquidated from unliquidated claims is not the extent of the dispute nor the amount of evidence required to establish the claim, but whether the process for determining the claim is fixed, certain, or otherwise determined by a specific standard." *In re Stern*, 266 B.R. at 326 (quoting *In re Barcal*, 213 B.R. at 1014). "Liquidation bears on the amount of liability not whether liability exists." *In re Wiencko*, 275 B.R. at 779 (citing *United States v. Verdunn,* 89 F.3d 799, 802 (11th Cir.1996)).

  Here, the Seaside Claim is based on a judgment entered against Kelly in the amount of $611,543.30. A copy of the Order entering judgment in Seaside's favor is attached to Seaside's proof of claim. The four-page Order summarizes the litigation between the parties and makes clear that judgment is being entered against Kelly, the only named plaintiff in that action. The related Judgment entering judgment in favor of Seaside is also attached along with the Amended Judgment specifically naming Kelly as the person against whom judgment is entered. A substantial hearing or review of evidence is not required to verify the amount of the Seaside Claim. *See In re Wiencko*, 275 B.R. at 779. Moreover, neither Kelly's dispute over the District Court's entry of the Amended Judgment nor her pending appeal renders the debt unliquidated for eligibility purposes. The Court considers those debts that exist as of the Petition Date and the Seaside Claim was a liquidated, noncontingent judgment as of the Petition Date. Although Kelly disputes the Seaside Claim, claims that are disputed as to liability are factored into the eligibility analysis. *See In re Stern*, 366 B.R. at 327 ("[M]erely because the debtor labeled the [claim] as

15

'disputed' did not make it so, where the state court already adjudicated it and entered a money judgment on it against the debtor."). Thus, having determined that the Seaside Claim is liquidated and noncontingent, that claim alone renders Kelly ineligible for Chapter 13 because it exceeds the jurisdictional limit of $394,725.00 for unsecured debts. *See* 11 U.S.C. § 109(e).

The same reasoning applies to the Naples Claim. Merely disputing the debt does not render it unliquidated or contingent when it has already been reduced to a judgment. The Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida entered the 45-page Final Judgment of Foreclosure on September 10, 2015, in which it determined that U.S. Bank holds a lien against the Naples Property in the amount of $2,753,490.90, plus interest. Kelly's assertion that the Regions Settlement Agreement dated April 8, 2015—a date that fell in the middle of the trial with U.S. Bank—somehow released U.S. Bank's claim as evidenced by the Final Judgment of Foreclosure dated September 10, 2015 is incredulous. Therefore, as set forth at the hearing on the Motion to Dismiss, the Court finds that the filings related to the Motion to Dismiss and to the Naples Claim establish that U.S. Bank held a liquidated, noncontingent secured claim in the amount of $3,219,793.50 as of the Petition Date, which includes interest and other fees and costs incurred since entry of the Final Judgment of Foreclosure. Consequently, the Naples Claim, by itself, establishes that Kelly exceeds the Chapter 13 jurisdictional limit of $1,184,200.00 for noncontingent, liquidated secured debts. *See* 11 U.S.C. § 109(e). Moreover, as pointed out by the Chapter 13 Trustee, when one considers that the Naples Claim is only secured up to the value of the Naples Property, which Kelly scheduled as being $2,575,908.00, then the unsecured portion of the Naples Claim, by itself, exceeds the Chapter 13 unsecured debt limit.

### IV.  Conclusion

For these reasons, the Court finds that the Motions to Reconsider fail to establish a basis to warrant the extraordinary remedy of altering or amending the Dismissal Order under Rule 59(e). An Order consistent with this Memorandum Opinion will be entered contemporaneously herewith.

cc:   Debtor, *Pro Se*
   Chapter 13 Trustee
   United States Trustee
   All Creditors and Parties-in-Interest

   Gregory B. Myers
   700 Gulf Shore Blvd. North
   Naples, FL 34102

   Gregory B. Myers
   4505 Wetherill Road
   Bethesda, MD 20816

**END OF MEMORANDUM**